**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

WILLIAM LACEY,

                       Plaintiff,

            v.                           No. 15-CV-539
                                              (DNH/CFH)

N. SMITH, et al.,

                       Defendants.

_____

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                       **OF COUNSEL:**

William Lacey
Plaintiff Pro Se
14-A-1585
Mohawk Correctional Facility
P.O. Box 8451
Rome, New York 13440

HON. ERIC T. SCHNEIDERMAN      ORIANA L. CARRAVETTA, ESQ.
Attorney General for the             Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff pro se William Lacey ("Plaintiff"), an inmate who was, at all relevant times, in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Michele Byno, R.N., Mary Kowalchuk, P.A., Corrections Officer (C.O.) Jarred Bullock, Deputy Superintendent[2] Earl Bell, and Superintendent Donald G. Uhler violated his rights under the First and Eighth Amendments.  See Dkt. No. 1 ("Compl.").  Plaintiff commenced this action on May 1, 2015, seeking compensatory damages.  Compl. at 12-13.  Upon initial review of the complaint, District Judge David N. Hurd granted plaintiff's application to proceed in forma pauperis, and dismissed without prejudice certain claims and defendants. Dkt. No. 6 at 21-22.  Plaintiff's deliberate indifference claims against defendants Bullock, Kowalchuk, and Byno; supervisory claims against defendants Uhler and Bell; and, retaliation claim against Byno survived the Court's sua sponte review.  Id. at 22-23. Presently pending is defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56(a).  Dkt No. 30.  Plaintiff did not oppose the motion. For the following reasons, it is recommended that defendants' motion be granted in its entirety.

## I. Background

The facts are review in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra.

---

[2]  At the time of the incidents outlined in plaintiff's complaint, Bell was the Acting Superintendent at Upstate Correctional Facility ("Upstate C.F.").  Declaration of Earl Bell ("Bell Decl.") ¶ 1.

### A. Facts[3]

### 1. Deliberate Indifference and Retaliation Claims Against Byno

Byno conducted an initial health screening for plaintiff when he arrived at Upstate C.F. on January 6, 2015. Declaration of Michele Byno ("Byno Decl.") ¶ 12. At that time, Byno noted that plaintiff was receiving Neurontin, a medicine for patients susceptible to seizures. Id. ¶¶ 12-13. Neurontin is a "1:1 medication", which means that it must be administered by a nurse each time an inmate takes the medication. Id. ¶ 15. On January 17, 2015, Byno attempted to administer Neurontin to plaintiff. Id. ¶ 20. To ensure that the medication had been ingested by plaintiff, Byno asked plaintiff to open his mouth, lift his tongue, and pull his cheeks.[4] Id. Plaintiff did not open his mouth, lift his tongue, or pull his cheeks, therefore, Byno concluded that plaintiff was "cheeking"[5] his medication. Id.

After completing her medical run for the evening, Byno called Dr. Schroyer, the facility physician, to inform him that plaintiff was "cheeking" his medication. Byno Decl. ¶ 21. Dr. Schroyer issued an order by telephone discontinuing plaintiff's Neurontin. Id. Plaintiff alleges that Byno was lying when she told Dr. Schroyer that he was "cheeking" his Neurontin. Compl. at 10.

On February 25, 2015, plaintiff iasked Byno about his self-carry medication[6] while

---

[3] The facts set forth in plaintiff's complaint and defendants' motion are summarized below only to the extent they are relevant to plaintiff's surviving claims.

[4] Byno stated that Upstate C.F.'s policy dictated that inmates ingest their 1:1 medication in front of the nurse administering the medication. Byno Decl. ¶ 18.

[5] "Cheeking" a medication means that an inmate has attempted to hide a medication in his cheek or under his tongue, in order to sell or barter the medication, or to hoard the medication in order to get high. Byno Decl. ¶ 6.

[6] "Self-carry" medications are carried on an inmate's person and may be taken at the inmate's discretion. Byno Decl. ¶ 14.

Byno was performing rounds.  Compl. at 9.  Byno became agitated with plaintiff and made "degrading and racial remarks" toward him.  Id.

## 2.  Deliberate Indifference Claim Against Kowalchuk

Plaintiff met with Kowalchuk, a physician's assistant, on February 4, 2015, during a "PA Callout".[7]  Declaration of Mary Kowalchuk ("Kowalchuk Decl.") ¶ 17.  At that time, plaintiff complained of skin issues and dizziness.  Id. ¶ 19.  Plaintiff stated that he reported dizzy spells, seeing spots, severe headaches, and muscle cramping.  Compl. at 6.  Plaintiff "begged" Kowalchuk to reorder his Neurontin.  Id.

Kowalchuk's medical notes from that date indicated that plaintiff had not suffered any seizures since his Neurontin was discontinued, and that plaintiff told her that he was not cheeking his Neurontin.  Id. ¶ 19.  Kowalchuk's notes further state that plaintiff reported that he passed out "a couple of times."  Id.  Kowalchuk told plaintiff that his fainting spells were never reported to medical staff.  Compl. at 6.

Kowalchuk ordered a routine EKG and advised plaintiff to alert the corrections officers if he passed out again, and that the corrections officers would alert the medical staff in that event.  Id. ¶ 19.  Kowalchuk did not reorder Neurontin for plaintiff.  Id.  Kowalchuk told plaintiff that he would not receive Neurontin because he was "cheeking" the medication and because his "blood level for Neurontin was low."  Compl. at 6-7.  Kowalchuk stated that she did not reorder Neurontin for plaintiff because she observed in plaintiff's file a notation

---

[7]  A "PA Callout" occurs when an inmate makes three consecutive complaints about the same medical issue through Nurses Sick Call slips.  Kowalchuk Decl. ¶ 17.  After the third time that an inmate complains about the same medical issue, the inmate is removed from his cell and brought to the nurse's station to discuss his issue with a physician's assistant.  Id.

that indicated his Neurontin was discontinued per Dr. Schroyer's orders due to plaintiff's "cheeking" the medication. Kowalchuk Decl. ¶ 21. Kowalchuk would need to discuss the issue with a facility physician before deciding to reorder Neurontin. Id. ¶ 22. Because plaintiff had not suffered any seizures since his Neurontin was discontinued, Kowalchuk did not find it necessary to discuss the issue with the facility physicians. Id.

### 3. Deliberate Indifference Claims Against Bullock

On January 30, 2015, plaintiff suffered a mild seizure and passed out in his cell, in front of his cell mate—Jason Smith. Compl. at 5. Smith alerted Bullock to plaintiff's condition and Bullock stated that he would alert the medical staff. Id. Plaintiff alleged that Bullock failed to alert the medical staff, and that plaintiff was ignored for the remainder of the day. Id. Bullock alleged that neither plaintiff nor Smith alerted him to any medical concerns of plaintiff on January 30, 2015. Declaration of Jarred Bullock ("Bullock Decl.") ¶ 6.

On February 1, 2015, plaintiff suffered another mild seizure during the lunch hour on his cell block. Compl. at 5-6. Plaintiff alleged that Bullock witnessed Smith helping plaintiff from the floor to his bed after suffering the seizure. Id. at 6. Bullock told Smith that plaintiff was "just hungry and needed to drink some water." Id. Bullock failed to alert the medical staff to plaintiff's condition despite Smith's stating concern for plaintiff's condition. Id. Bullock stated that neither plaintiff nor Smith alerted him to any medical concerns of plaintiff on February 1, 2015. Bullock Decl. ¶ 7.

#### 4. Supervisory Liability Claims Against Uhler and Bell

On January 22, 2015, plaintiff told Uhler during Uhler's rounds that he suffers from seizures and that he was not receiving his seizure medication.  Compl. at 4.  Uhler told plaintiff that he would "look into" plaintiff's situation.  Id.  On January 27, 2015, plaintiff wrote a letter to Uhler and "Albany agencies" regarding his medical condition.  Id.

On January 29, 2015, plaintiff told Bell during Bell's rounds that he was not recieving his seizure medication.  Compl. at 5.  Bell told plaintiff that he should contact non-parties Kumon and Danforth[8] regarding his medical concerns.  Id.  Plaintiff received a letter from Bell on that same day, regarding a grievance plaintiff filed on January 27, 2015.  Id.  Bell received a grievance from plaintiff on January 28, 2015, indicating that plaintiff needed seizure medication.  Bell Decl. ¶ 8.  Bell issued a memorandum to plaintiff, returning the grievance and indicating to plaintiff that he must submit any grievance directly to the IGP offices where grievances are maintained.  Id. ¶ 9.

## II. Discussion

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the

---

[8] Kumon and Danforth were dismissed from this action pursuant to the Decision and Order of District Judge Hurd, entered June 11, 2015.  Dkt. No. 6 at 22.

motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is

material if it may affect the outcome of the case as determined by substantive law, such that

"a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is

appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences

against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show

that there is some metaphysical doubt as to the material facts."  Carey v. Crescenzi, 923

F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,

475 U.S. 574, 586 (1986)).  A non-moving party must support such assertions by evidence

showing the existence of a genuine issue of material fact.  Carey, 923 F.2d at 19.  "When

no rational jury could find in favor of the non-moving party because the evidence to support

is so slight, there is no genuine issue of material fact and a grant of summary judgment is

proper."  Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to "special solicitude," . . . that a pro se
> litigant's submissions must be construed "liberally," . . . and
> that such submissions must be read to raise the strongest
> arguments that they "suggest," . . . .  At the same time, our
> cases have also indicated that we cannot read into pro se
> submissions claims that are not "consistent" with the pro se
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not
> "excuse frivolous or vexatious filings by pro se litigants," . . .
> and that pro se status "does not exempt a party from

> compliance with relevant rules of procedural and
> substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191–92 (2d Cir. 2008).


### B. Eighth Amendment

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments' on

those convicted of crimes, which includes punishments that 'involve the unnecessary and

wanton infliction of pain.'"  U.S. Const. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66

(2d Cir. 1994) (citations omitted).  The Eighth Amendment obligates prison officials to

provide necessary medical care to prisoners.  Id.  Thus, "a prison official's 'deliberate

indifference' to a substantial risk of serious harm to an inmate violates the Eighth

Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quoting Helling v. McKinney,

509 U.S. 25 (1993)) (additional citations omitted).

To state a cognizable 1983 claim against prison officials for deliberate indifference to

serious medical needs, the prisoner must first show that he had "in objective terms, [a]

sufficiently serious" medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)

(quoting Hathaway, 37 F.3d 66).  Second, the prisoner must show that the state actor

demonstrated deliberate indifference by having knowledge of the risk of harm and failing to

take measures to avoid the harm.  Id. at 702 (quoting Farmer, 511 U.S. 837).

Two inquiries are involved in determining whether a specific deprivation is

"sufficiently serious."  The first inquiry assesses whether the plaintiff was actually deprived

of medical care.  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  A prison official

who acts "reasonably" in response to an inmate's medical need will not be found liable under the Eighth Amendment, as a prison official's duty is to provide "reasonable care." Id. (citing Farmer, 511 U.S. at 844-47).  The second inquiry focuses on the care that the inmate actually received, and asks the Court to determine whether the purported inadequacy is "sufficiently serious." Id. at 280.  Thus, the Court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citing Helling, 509 U.S. at 32-33).  If an inmate alleges that prison officials failed to provide any treatment, courts must examine whether the inmate's actual medical condition was sufficiently serious.  Id.  A serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 702). The severity of the medical need and the denial of care must be judged within the context of the specific facts and circumstances surrounding the case.  Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

"An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d 702 (quoting Farmer, 511 U.S. 837).  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. 104-05.  Further, "mere disagreement over the proper treatment does not create a

constitutional claim." <u>Chance</u>, 143 F.3d at 703. Thus, "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." <u>Chance</u>, 143 F.3d at 703; <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986).

### 1. Nurse Byno

Plaintiff alleges that Byno was deliberately indifferent to his medical needs because she lied to Dr. Schroyer about plaintiff "cheeking" his medication. Compl. at 10. Byno contends that she was not lying when she told Dr. Schroyer that plaintiff was "cheeking" his medication. Byno Decl. ¶ 20. Further, Byno contends that she does not have the authority to discontinue plaintiff's Neurontin. <u>Id.</u> ¶¶ 22-23.

Even assuming that plaintiff's seizure condition satisfies the first prong of deliberate indifference analysis as a "sufficiently serious" condition, plaintiff has failed to prove that Byno was personally involved in the alleged constitutional violation, as explained below.[9]

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Thus, a nurse who does not have the authority to prescribe or discontinue a medication cannot be held liable for withholding a medication from an inmate. <u>See</u> <u>Jones v. Vadlamudi</u>, No. 9:13-CV-00025,

---

[9] The undersigned notes that courts in this Circuit have found that seizures may be a "sufficiently serious" medical condition that satisfies the first prong of a deliberate indifference claim. <u>See</u> <u>Thompson v. Carter</u>, 284 F.3d 411, 419 (2d Cir. 2002) (finding that Jacksonian epilepsy may be a sufficiently serious medical condition); <u>Harrington v. Vadlamudi</u>, No. 9:13-CV-0795, 2016 WL 4570441, at *6 (N.D.N.Y. Aug. 9, 2016) (finding that the plaintiff's seizures were a sufficiently serious medical condition under the Eighth Amendment).

2015 WL 670474, at *7 (N.D.N.Y. Feb. 17, 2015) (finding that a nurse administrator was not personally involved in the alleged constitutional deprivation because she did not have the authority to prescribe narcotic medications). Here, Byno states that DOCCS policy required her to ensure that inmates were actually ingesting any 1:1 medication they received. Byno Decl. ¶ 19. During Byno's January 17, 2015 medical run, she observed that plaintiff would not open his mouth in order for her to comply with DOCCS policy. Id. ¶ 20. Thus, Byno reported plaintiff's actions to Dr. Schroyer, who discontinued plaintiff's Neurontin by telephone order. Id. ¶¶ 21-22. Plaintiff's assertion that Byno lied to Dr. Schroyer is belied by the record. Not only has Byno submitted a sworn declaration indicating that she observed plaintiff "cheeking" Neurontin, but the Court also notes that a test measuring plaintiff's Neurontin level was performed on January 19, 2015, as stated in Uhler's denial of plaintiff's appeal of the grievance he filed following the discontinuance of Neurontin. Declaration of Donald G. Uhler ("Uhler Decl.") Exh. A (Dkt. No. 30-7 at 7). Plaintiff's Neurontin level was much lower than expected, indicating that plaintiff "had not taken his Neurontin for quite some time[.]" Id. Thus, the Court finds that Byno reported her honest observation to Dr. Schroyer, but had no involvement in the decision to discontinue plaintiff's Neurontin. Id. ¶ 22. Byno's declaration is undisputed by plaintiff. Thus, the Court finds that Byno was not personally involved in the alleged violation of plaintiff's Eighth Amendment right. See Dove v. Harder, No. 09-CV-259 (NAM/DRH), 2010 WL 3785787, at *5 (N.D.N.Y. Aug 19, 2010) (dismissing the plaintiff's deliberate indifference claim against a nurse where the plaintiff failed to show that the nurse was involved in any treatment decisions).

Accordingly, the undersigned recommends that defendants' motion on this ground be granted.

## 2. P.A. Kowalchuk

Plaintiff claims that Kowalchuk was deliberately indifferent to his medical needs by ignoring his pleas to receive his Neurontin medication on February 4, 2015. Compl. at 6-7. Defendants argue that Kowalchuk acted with reasonable care when she met with plaintiff during a P.A. callout on February 4, 2015. Dkt. No. 30-2 at 14-15.

Plaintiff takes issue with the fact that Kowalchuk allegedly ignored his pleas to be placed back on Neurontin, especially because he reported to her that he was experiencing dizzy spells, seeing spots, and suffering headaches and muscle cramping. Compl. at 6. Kowalchuk's notes from her February 4, 2015 meeting with plaintiff indicate that plaintiff had not experienced a seizure since his Neurontin was discontinued. Declaration of Mary Kowalchuk ("Kowalchuk Decl.") ¶ 19. She further noted that plaintiff stated that he had passed out "a couple of times" and reported the same to corrections officers, but that she never received any notes of these incidents. Id. Given plaintiff's own report that he had passed out twice, Kowalchuk ordered an EKG test. Id. She did not reorder his Neurontin medication. Id. Kowalchuk stated that she did not reorder plaintiff's Neurontin for two reasons. Id. ¶ 22. First, she would need to discuss the issue with a facility physician before reordering Neurontin. Id. ¶ 22. Second, she opined that it was not necessary to discuss reordering plaintiff's Neurontin with a facility physician because plaintiff had not suffered any seizures since stopping the medication. Id. Thus, Kowalchuk's judgment as a medical professional indicated that reordering plaintiff's Neurontin was not necessary. Id. ¶ 23.

It is well-settled in this Circuit that "a difference of opinion between an inmate and medical professionals, or even among medical professionals themselves, as to the appropriate course of medical treatment does not in and of itself amount to deliberate

indifference." <u>Williams v. M.C.C. Institution</u>, No. 97 CIV. 5352 (LAP), 1999 WL 179604, at *7 (S.D.N.Y. March 31, 1999). Here, Kowalchuk stated that she felt that it was not necessary to reorder plaintiff's Neurontin. Kowalchuk Decl. ¶ 23. Kowalchuk concluded that Neurontin was unnecessary because plaintiff had not suffered any seizures since being taken off the medication. <u>Id.</u> ¶ 21. Further, Kowalchuk ordered an EKG in response to plaintiff's claims that he had passed out on multiple occasions. <u>Id.</u> ¶¶ 19-20. Thus, the record shows that Kowalchuk diligently addressed plaintiff's medical concerns. In viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether Kowalchuk was deliberately indifferent to his serious medical need. <u>See</u> <u>Wright v. Genovese</u>, 694 F. Supp. 2d 137, 156-57 (N.D.N.Y. 2010) ("Plaintiff's . . . conclusory allegations of deliberate indifference do not negate extensive evidence that [defendants] diligently addressed plaintiff's medical needs over an extended period of time.").

Accordingly, it is recommended that defendants' motion on this ground be granted.

### 3. C.O. Bullock

Plaintiff's allegations against Bullock stem from two separate incidents. First, plaintiff alleges that on January 30, 2015, Bullock failed to alert the medical staff while plaintiff suffered from a mild seizure. Compl. at 5. Second, plaintiff alleges that, on February 1, 2015, Bullock again observed plaintiff pass out in his cell, but failed to alert the medical staff. <u>Id.</u> at 5-6.

Defendants argue that plaintiff did not present a serious medical need. Dkt. No. 30-2 at 11- 13. Specifically, defendants analogize plaintiff's claims to <u>Miller v. Winchelle</u>, No.

9:13-CV-1405 (DNH/ATB), 2015 WL 847421, at *4-6 (N.D.N.Y. Feb. 26, 2015), a case where the plaintiff's deliberate indifference claims were dismissed, in part, for his failure to show that his "seizure like episode" presented a serious medical need. Thus, defendants allege that plaintiff did not suffer from an objectively serious medical need. Further, defendants argue that plaintiff has failed to present a triable issue of fact as to Bullock's unreasonable delay in seeking medical attention for plaintiff because, as to each incident alleged in plaintiff's complaint, medical care was provided to plaintiff on the very next day. Id.

Defendants argue that plaintiff's conditions on January 30, 2015, and February 1, 2015, were not "condition[s] of urgency, []that may produce death, degeneration, or extreme pain." Dkt. No. 30-2 at 12 (citing Hathaway, 37 F.3d at 66) (additional citation omitted). Here, plaintiff stated during his deposition that he suffered a seizure on January 30, 2015 and passed out in his cell. Carravetta Aff. Exh. A (Dkt. No. 30-3) at 33-34. When plaintiff awoke, his cellmate informed him that he had alerted Bullock to plaintiff's condition. Id. at 33. After plaintiff regained consciousness, Bullock passed his cell again. Id. at 34. At that time, plaintiff inquired as to whether he would receive medical attention. Id. Bullock states that he was not alerted by plaintiff or his cellmate to any medical concerns regarding plaintiff. Declaration of Jarred Bullock ("Bullock Decl.") ¶ 6. The next morning, January 31, 2015, plaintiff was seen by a nurse at 6:55 a.m. Carravetta Aff. Exh. B (Dkt. No. 31) at 19. Plaintiff did not complain about passing out on the prior day; he only complained about experiencing hand dryness. Id.

Similar to the incident that occurred on January 30, 2015, plaintiff claims that Bullock again ignored his request for medical assistance on February 1, 2015. Compl. at 5-6. On

that day, plaintiff claims that he suffered another mild seizure.  Id.  Plaintiff claims that

Bullock told plaintiff's cellmate that plaintiff was just hungry and needed to drink water, and

failed to inform the medical staff of plaintiff's condition.  Id. at 6.  Bullock denies that either

plaintiff or his cellmate reported any medical concerns or problems to him on February 1,

2015.  Bullock Decl. ¶ 7.  Plaintiff was seen by a nurse the next day, February 2, 2015, and

did not report that he passed out in his cell the day before.  Carravetta Aff. Exh. B at 18.  He

was next examined on February 4, 2015 by defendant Kowalchuk.  Id.

The Court finds, based on the events described by plaintiff during his deposition,

Bullock's version of events, and plaintiff's medical records, that plaintiff has not presented a

triable issue of fact as to whether Bullock's alleged failure to seek medical care for plaintiff

was unreasonable.  Plaintiff alleges that Bullock failed to alert the medical staff to his self-

described mild seizure episodes on January 30 and February 1, 2015.  Compl. at 5-6.

However, plaintiff was seen by medical staff the very next day after each of these two mild

seizure episodes.  Carravetta Aff. Exh. B at 18-19.  Furthermore, plaintiff did not complain

during these visits with medical staff about experiencing mild seizures.  Id.  Plaintiff must

show some measurable harm that resulted from the alleged delay in treatment in order to

present a triable issue of fact for his deliberate indifference claim, and he has failed to do

so.  See Colon v. Plescia, No. 9:07-CV-0727 (DNH/DEP), 2009 WL 2882944, at *8-9

(N.D.N.Y. July 27, 2009) (granting summary judgment on the plaintiff's deliberate

indifference claim where the plaintiff failed to show substantial harm resulting from a delay

in treatment).  Here, plaintiff has failed to identify any evidence showing the harm he

suffered from Bullock's alleged ignorance of his medical condition.

Accordingly, the Court recommends that defendants' motion on this ground be

granted.

## C. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[10] Assertions of personal involvement that are

---

[10] Various courts in the Second Circuit have postulated how, if at all, the Ashcroft v. Iqbal, 556 U.S. 662 (2009) decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories

-16-

merely speculative are insufficient to establish a triable issue of fact.  See e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Here, plaintiff claims that, on January 22, 2015, he stopped defendant Uhler while Uhler was making rounds, and complained that he was not receiving his Neurontin medication.  Compl. at 4.  Uhler allegedly told plaintiff that he would "look into" the issue.  Id. Plaintiff further claims that he inquired whether he could write a letter to Uhler, and that Uhler told him that he could.  Carravetta Aff. Exh. A (Dkt. No. 30-3) at 44.  Uhler also recommended to plaintiff during this conversation that he enter a sick call request, and plaintiff said that he would do so.  Id. at 44.  Plaintiff then wrote a letter to Uhler.  Compl. at 4.

Similar to plaintiff's interactions with Uhler, plaintiff alleges that he stopped defendant Bell, while Bell was making rounds, and complained that he was not receiving his Neurontin medication.  Compl. at 5.  Plaintiff alleges that Bell told him that he should direct his complaints to the medical staff, and utilize the grievance procedures at the facility.  Id.

It is well-established that a prison official is not personally involved in a constitutional violation if the prison official, upon being advised by an inmate that he is dissatisfied with the medical care he is receiving, merely directs the inmate to a subordinate.  Further, prison officials are entitled to "delegate medical responsibility to facility medical staffs."  Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 183 (N.D.N.Y. 1996).  Here, plaintiff has failed to show that either Uhler or Bell had any direct involvement in his medical treatment.  Although plaintiff claims that he alerted both officials to his medical issue, both Uhler and Bell advised

---

pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

plaintiff to seek relief through contact with the medical staff.  See Morales v. Fischer, 46 F.

Supp. 3d 239, 255 (W.D.N.Y. 2014) (finding no personal involvement with the plaintiff's

deliberate indifference claims where the prison superintendent was not involved in any

medical decisions regarding plaintiff).  Although plaintiff claims that he wrote letters to both

Uhler and Bell, sending letters or grievances to prison officials is insufficient to establish the

personal involvement of the officials.  See Mateo v. Fischer, 682 F. Supp. 2d 423, 430

(S.D.N.Y. 2010).  Although plaintiff claims that he spoke with Uhler and Bell, on one

occasion each, the Court finds that both Uhler and Bell rightly directed plaintiff toward the

proper avenues for relief, and thus were not personally involved in denying medical care to

plaintiff.  See id.

 Accordingly, it is recommended that defendants' motion on this ground be granted.


## D.  First Amendment Retaliation

 Plaintiff claims that Byno retaliated against him by "deliberately antagoniz[ing]" him in

response to grievances he filed against the medical staff.  Compl. at 9.  Defendants claim

that plaintiff has failed to show that he suffered an adverse action as required to prove a

First Amendment retaliation claim.[11]  Dkt. No. 30-2 at 25.

 Courts are to "approach  [First Amendment] retaliation claims by prisoners 'with

skepticism and particular care[.]'"  See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir.

2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other

---

[11]  Defendants also allege that plaintiff failed to exhaust administrative remedies as to the First
Amendment retaliation claim against defendant Byno.  Dkt. No. 30-2 at 20-24.  However, because the Court
recommends dismissal of this claim on the merits, the Court declines to address defendants' exhaustion of
administrative remedies defense.

grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).  A retaliation claim under

section 1983 may not be conclusory and must have some basis in specific facts that are not

inherently implausible on their face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South

Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a

First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that

the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected

speech and the adverse action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)

(quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by

Swierkiewicz, 534 U.S. 506 (2002)).  If the plaintiff meets this burden, the defendants must

show, by a preponderance of the evidence, that they would have taken the adverse action

against the plaintiff "even in the absence of the protected conduct."  Mount Healthy City

Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  "Types of circumstantial

evidence that can show a causal connection between the protected conduct and the alleged

retaliation include temporal proximity, prior good discipline, finding of not guilty at the

disciplinary hearing, and statements by defendants as to their motives."  See Barclay v.

New York, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).  In order to prove an adverse action,

a plaintiff must show that the defendant's "'retaliatory conduct . . . would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights . . . .

Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of

constitutional protection.'"  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011)

(quoting Dawes, 239 F.3d at 292-93).

Plaintiff has shown that he engaged in constitutionally protected conduct insofar as

he claims to have filed a grievance against Byno.  See Graham v. Henderson, 89 F.3d 75, 80 (1996).  However, he has failed to show that he suffered an adverse action.

Verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim.  Marrero v. Kirkpatrick, No. 08-CV-6237 (MAT), 2012 WL 2685143, at *7 (W.D.N.Y. July 6, 2012) (citing Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010)) (additional citation omitted).  Further, verbal harassment and threats are generally not considered conduct "'that would deter a similarly situation individual of ordinary firmness of exercising constitutional rights.'"  Cabassa v. Smith, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009) (citing Gill, 389 F.3d at 380) (additional citation omitted).  However, verbal threats may constitute adverse action for purpose of a First Amendment retaliation if the threat is sufficiently specific.  Barrington v. New York, 806 F. Supp. 2d 730, 746 (S.D.N.Y. 2011); see also Ford v. Palmer, 539 F. App'x 5, 5 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where corrections officer threatened to poison the plaintiff in retaliation for filing his grievances).

Here, plaintiff claims that Byno "made degrading and racial remarks towards plaintiff." Compl. at 9.  Even accepting these allegations as true, the Court finds that plaintiff's allegations lack sufficient specificity to constitute adverse action.  "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  Mateo, 682 F. Supp. 2d at 434 (citation omitted).  Plaintiff's claims that Byno made "racial and derogatory remarks" toward him are not only vague, but they also fail to qualify as "threatening" in a way that would deter an inmate from exercising his First Amendment rights.  See e.g., Lunney v. Brureton, No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at

*19 (S.D.N.Y. May 29, 2007) (denying summary judgment on the plaintiff's First Amendment retaliation claim where an officer threatened to "break [the plaintiff's] neck" if he continued to file grievances). Thus, the Court finds that Byno's alleged remarks are insufficient to establish adverse action against plaintiff.

Accordingly, the Court recommends that defendants' motion on this ground be granted.


### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 30) be

**GRANTED** in all respects as to all claims and defendants; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).


DATED:    January 3, 2017
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge